2024 IL App (2d) 240035-U
Nos. 2-24-0035 & 2-24-0036 & 2-24-0037 cons.
Order filed April 4, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Nos. 21-CF-169, 22-CF-1039, 22-CF-684 |
| JONATHAN B. SAWYER, | ) ) | Honorable Tiffany E. Davis, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Birkett and Schostok concurred in the judgment.

**ORDER**

¶ 1   *Held*: The evidence supported the trial court's findings that defendant committed a detainable offense and is a willful flight risk. The trial court did not abuse its discretion in ordering defendant's detention.

¶ 2                    I. BACKGROUND

¶ 3   This consolidated appeal is born of three separate sets of criminal charges against defendant, Jonathan B. Sawyer.

¶ 4                  A. Case No. 21-CF-169

¶ 5    On March 15, 2021, defendant was charged with possession of a controlled substance, less than 15 grams of cocaine (720 ILCS 570/402(c)), possession of drug paraphernalia (720 ILCS 600/3.5(A)), and possession of methamphetamine, less than 5 grams (720 ILCS 646/60(a)(1)). Defendant posted bond on March 23, 2021, and was released from custody. On May 21, 2021, he failed to appear for court. His bond was forfeited and a bench warrant was issued. Defendant was subsequently arrested in Wisconsin and bond was reinstated at $20,000. Defendant did not post bond.

¶ 6    On May 2, 2022, defendant was admitted into the Drug Court Program. He pleaded guilty to possession of methamphetamine and was sentenced to 30 months' probation. Defendant failed to appear before the court on August 4, 2022. A bench warrant for his arrest was issued and bond was set at $30,000. On September 14, 2022, the state filed a motion to discharge defendant from the Drug Court Program citing seven positive tests in July 2022 for methamphetamine and cocaine.

¶ 7                        B. Case No. 22-CF-1039

¶ 8    On December 2, 2022, defendant was charged with two counts of retail theft (720 ILCS 5/16-25) for stealing $820.81 worth of clothing and a vacuum from a Walmart in Johnsburg; one count of driving while license revoked (625 ILCS 5/6-303(a)); one count of fleeing or attempting to elude a peace officer (625 ILCS 5/11-204); and one count of failure to signal when required (625 ILCS 5/11-804(b)).

¶ 9                        C. Case No. 23-CF-684

¶ 10   On July 14, 2023, defendant was charged with (1) deliver or possess with intent to deliver methamphetamine (720 ILCS 646/55(a)(1)), 15 grams but less than 100 grams; (2) manufacture/deliver controlled substance-cocaine (720 ILCS 570/401(a)(2)(A)), 15 grams but less than 100 grams; (3) manufacture/deliver controlled substance-fentanyl (720 ILCS

570/401(a)(1.5)(A)), 15 grams but less than 100 grams; (4) possession of methamphetamine (720 ILCS 646/60(a)), 15 grams but less than 100 grams; (5) possession of controlled substance-cocaine (720 ILCS 560/402(a)(2)(A), 15 grams but less than 100 grams; (6) possession of controlled substance-other drug (720 ILCS 570/402(c)), less than 200 grams of any substance containing fentanyl; (7) unlawful possession of drug paraphernalia (720 ILCS 600/3.5(a)); and (8) resisting officer, firefighter, or correctional employee (720 ILCS 5/31-1(a)(1)).

¶ 11                                      D. Facts of Detention Hearing

¶ 12    Defendant filed a motion for hearing for release on conditions related to all three case numbers. The State filed a verified petition to deny pretrial release on case No. 23-CF-684, stating that the no conditions set forth in 725 ILCS 5/110-10(b) could mitigate (1) the real and present safety of any person or persons or the community based on the specific articulable facts of the case or (2) defendant's willful flight for class 3 or greater felony offenses.

¶ 13    The trial court held a pretrial detention hearing on all of the case numbers on January 3, 2024. The State proceeded by way of proffer on case No. 23-CF-684, and recounted to the trial court as follows:

> "On July 14th of 2023, Detective Nicholas Clesceri *** with the McHenry County Sheriff's Narcotics Task Force received information from a source that he indicated was credible who advised that [defendant] would be conducting a narcotics transaction at the Thorntons gas station on Illinois Route 120 in McHenry. This source of information advised that [defendant] would be showing up with a ball of crack cocaine, which is approximately 3.5 grams of cocaine, and that he would be utilizing a cellphone number ending in 3323 to arrange that deal.

Officers were able to determine that [defendant] had two active failure to appear warrants out of both McHenry and Lake County at that time and they were valid and within the geographical limitations.

Members of the task force set up surveillance around the gas station and adjacent parking lots at that Thorntons gas station I previously mentioned. And while they were surveilling that location, a white in color Kia sedan pulled into the gas station and that vehicle parked on the south side of the lot. The passenger's door opened and a male exited the vehicle who was positively identified by the detectives involved as [defendant]. And actually, I'm sorry, he exited the vehicle prior to the vehicle finding a parking space. [Defendant] began walking northbound through the parking lot and was on his phone and looking around. The Kia parked in front of the Thorntons gas station store entrance, and the driver exited the vehicle and walked towards the front door.

Detective Clesceri was the front seat passenger in a department-issued vehicle that was being driven by a Sergeant Roehrkasse *** and Sergeant Roehrkasse drove up behind defendant and the emergency lights on the vehicle were activated. When the defendant saw the emergency lights, he immediately fled on foot northwestbound behind the Thorntons gas station. Detective Clesceri gave chase at that time, and Detective Clesceri began issuing commands for [defendant] to stop and to get on the ground. The defendant did not respond to the commands to stop and get on the ground and attempted to jump over the fence on the northern part of the property but was unable to get over the fence.

Ultimately [defendant] was taken into custody and secured with handcuffs and a search of his person was performed. In the defendant's right front pocket in a clear plastic baggy was an off-white chunky substance that based on Detective Clesceri's training ***

appeared to be approximately 3.5 grams of crack cocaine. There was also a glass smoking pipe with a bulb at the end in his right front pocket with a white residue, and that pipe appeared to be a pipe that would be used for the ingestion of methamphetamine into the body based on Detective Clesceri's training.

Detectives were able to make contact with the driver of the vehicle who is identified as the codefendant in this case, a Michael Mantor. Ultimately Mantor was also found to have crack cocaine on his person. The vehicle the defendant and his codefendant arrived in was searched after a narcotics detecting canine was deployed indicating the presence of narcotics within the vehicle.

The search of the vehicle yielded suspected cocaine that field tested positive for cocaine and Fentanyl, suspected methamphetamine that field tested positive for methamphetamine, suspected LSD, suspected Vicodin, multiple digital scales with a white residue, large amounts of packaging materials, drug paraphernalia, and cutting agents. And most of the illicit substances and packaging material and cutting agents and scales were found near the center console of the vehicle that would have been immediately accessible to defendant and his codefendant ***.

Detective Clesceri was able to obtain a search warrant for the defendant's phone. And in manually looking through the phone, he observed several text messages and various other message applications where the defendant was arranging for the sale of illicit substances, and there were prices and weights talked about as well as delivery. There were also pictures of what appeared to be illicit substances in the photograph history.

All and all recovered *** on [defendant's] person was approximately 3.2 grams of what field tested positive for Fentanyl and cocaine.

* * *

There were four individual plastic bags each with a white crystalline material removed from a black zippered case that was found in the vehicle. That was approximately 4.9 grams, and it field tested positive for both methamphetamine and Fentanyl.

There was a plastic bag containing a white in color powdery material in the driver's side of the vehicle. The approximate weight of the was 3.7 grams, and it field tested positive for the presence of cocaine and Fentanyl.

* * *

There was a plastic bag containing a white powder material located in the cup holder of the vehicle that had approximately 2.7 grams that field tested positive for the presence of cocaine and Fentanyl.

* * *

There was also a plastic clear crystalline material removed from the center console area with an approximate weight of .6 grams which tested positive for methamphetamine and Fentanyl.

There was another black zipper case with a plastic bag in the center console with an approximate weight of 1.1 grams that field tested positive for the presence of methamphetamine.

There was a Ziploc plastic bag containing a clear crystalline material that was also found in the vehicle and had an approximate weight of 11.4 grams and field tested positive for both methamphetamine and Fentanyl.

There was a plastic bag containing a white powder material with an approximate weight of 7.4 grams that field tested positive for the presumptive presence of cocaine and Fentanyl.

And finally, there was a melted plastic bag containing a beige in color rock-like material that weight approximately 1.5 grams and field tested positive for the presence of cocaine and Fentanyl."

¶ 14 The State offered a proffer with respect to case No. 22-CF-1039 as follows:

"[T]hat incident occurring on December 2nd of 2022, an officer with the Johnsburg Police Department *** responded to a reported retail theft. That this defendant was observed fleeing the location of that retail theft and entering into his vehicle. That the officer in that case *** did give pursuit to the defendant. Once the defendant got into his vehicle, that officer did activate his emergency lights and attempt to effectuate a traffic stop on the defendant's vehicle, and the defendant failed to stop for the emergency lights and sirens that were activated on the officer's vehicle and fled the scene in his vehicle and did not stop upon the request of that officer by way of his lights and sirens."

¶ 15 The State then recounted defendant's lengthy criminal history and pattern of failure to appear for court dates. To wit:

"[I]n 1996 he received conditional discharge for possession of drug paraphernalia.

In 1999 he received two years in the department of corrections for a domestic battery.

In 2002 he received probation for disorderly conduct.

In 2003 he received probation for domestic battery.

In 2004 he received 30 months in the department of corrections for driving under the influence. And also in 2004, he received a concurrent time of 30 months in the department of corrections for driving under the influence.

In 2005 *** there was a misdemeanor resisting charge where a bond forfeiture and bench warrant were issued.

In 2005 there was another felony DUI where the defendant received two years and six months in the department of corrections.

In 2007 there was a criminal trespass to residence where the defendant received 180 days in jail and conditional discharge, and there was also a bond forfeiture and bench warrant issued during the life of that case.

In 2009 there was a theft probation and also a bond forfeiture and a bench warrant issued during the course of that case.

In 2011 there was possession of a controlled substance where he received probation. It was a Lake County case. However, that probation was revoked and he ultimately received three years in the department of corrections. There was a bond forfeiture and bench warrant that did issue during the life of that 2011 possession case.

In 2016 there was an aggravated domestic battery where he received three years in the department of corrections. There was a bond forfeiture and bench warrant that issued while that case was pending.

In 2020 there was possession of a controlled substance out of Round Lake Beach. It's a Lake County case. I don't have a disposition for that, but there was a bond forfeiture and a bench warrant issued in the life of that case.

In 2021 with respect to [21 CF 169], which is on our call, he received drug court probation on that case. However, he was discharged from drug court on March 16th of 2023 for unsuccessfully complying with the terms and conditions of drug court.

*** [I]n 2022 he received conditional discharge and 180 days in jail on a driving while license suspended, a felony charge."

¶ 16    The trial court granted the State's verified petition to deny pretrial release to defendant on case No. 23-CF-684, and denied defendant's motion for hearing for release on conditions related to all relevant case numbers. The trial court found that the State met its burdens under both the dangerousness and willful flight standards. Regarding defendant's dangerousness, the trial court found as follows:

"The Court further finds the dangerousness determination has been made. The drugs found within the vehicle, *** [the] majority of which contain the presence of Fentanyl. The Court has numerous cases pending before it and is aware in the community Fentanyl with other combination of drugs is fatal, can be fatal, not always, but can be, and the fact that drug dealers continue to put Fentanyl in things is really mind blowing."

¶ 17    Regarding willful flight, the trial court found as follows:

"In this case the defendant is charged with fleeing a police officer in 22 CF 1039. He's also charged with fleeing in 23 CF 1213.[1] He's also fled from the officers on foot in 23 CF 684 attempting but unsuccessful in jumping a fence. Furthermore, his criminal history indicates a history of failing to come to court when required to come to court. And

---

[1]Case No. 23-CF-1213 is not subject to the issues raised by defendant in this appeal. However, the State did recount the facts of that case to the trial court by way of proffer.

so for all these reasons that detention petition is heard and granted and defendant's motion to be release with pretrial conditions is denied."

¶ 18    In its written January 3, 2024, order, the trial court explained its decision to detain defendant as follows:

"The court considers all conditions under 110-6.1 including those in subsection g and all other relevant statutory factors and considers that this defendant has 4 pending felonies in this County one of which defendant was on drug court probation and discharged from drug court probation. While out on bond in 21CF169 and 22CF1039 and 23CF1213, defendant committed the offenses outlined in 2023CF684. The Court takes judicial notice of defendant's extensive criminal history dating back to 1991. Defendant has had numerous bond forfeiture bench warrants that have issued under the prior bail law. Defendant has numerous driving violations and does not have a valid driver's license and has been charged with driving with a revoked license numerous times. The Court finds that defendant is charged with a class 3 or higher offense. The State has met its burden of establishing that no reasonable conditions can mitigate the threat of willful flight, due to defendant allegedly being involved in the sale of narcotics containing fentanyl, his being charged with fleeing and alluding a peace officer and fleeing from the officer in 23CF684, his extensive criminal history with a history of failing to appear in court, and his failure to comply with the terms and conditions of the Drug Court program."

¶ 19    Defendant filed notices of appeal for all case numbers using the form notice promulgated under Illinois Supreme Court Rule 606(d) (eff. Oct 19, 2023). He filed Rule 604(h) memorandum for case Nos. 21-CF-149 and 22-CF-1039, but submitted a declination letter notifying this court

that he would not be submitting Rule 604(h) memorandum with respect to case No. 23-CF-684. The State submitted memorandum on all case numbers.

¶ 20                                    II. ANALYSIS

¶ 21     In this appeal, defendant contends that the trial court erred in ordering him detained for case Nos. 21-CF-169 and 22-CF-1039 because the State did not file a verified petition to detain in those cases. Additionally, defendant contends that in case No. 23-CF-684 the State (1) failed to meet its burden of proving by clear and convincing evidence that the proof is evident or the presumption great that he committed the offenses charged and (2) failed to meet its burden of proving by clear and convincing evidence that defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case.

¶ 22     This appeal is brought pursuant to Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act (Act).[2] See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date of Act as September 18, 2023). The Act abolished traditional monetary bail in favor of pretrial release on personal recognizance or with conditions of release. 725 ILCS 5/110-1.5, 110-2(a) (West 2022).

¶ 23     In Illinois, all persons charged with an offense are eligible for pretrial release. 725 ILCS 5/110-2(a), 110-6.1(e). Pretrial release is governed by article 110 of the Code of Criminal

_____

[2]The Act has been referred to as the "SAFE-T Act" or the "Pretrial Fairness Act." Neither of those names is official, as neither appears in the Illinois Compiled Statute or the public act. *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n.1.

Procedure of 1963 (Code) as amended by the Act. *Id.* § 110-1 *et seq.* Under the Code, as amended, a defendant's pretrial release may only be denied in certain statutorily limited situations. *Id.* §§ 110-2(a), 110-6.1(e).

¶ 24    Upon filing a verified petition requesting denial of pretrial release, the State has the burden to prove, by clear and convincing evidence, that (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense (*id.* § 110-6.1(e)(1)), (2) the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community (*id.* § 110-6.1(e)(2)), and (3) no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community or prevent the defendant's willful flight from prosecution (*id.* § 110-6.1(e)(3)).

¶ 25    We begin with defendant's contention with respect to his detainment in case No. 23-CF-684. He contends that the State failed to prove the first two requirements by clear and convincing evidence. "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74. We review whether the trial court's findings were against the manifest weight of the evidence. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13; *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 10. A finding is against the manifest weight of the evidence when it is unreasonable. *People v. Sims*, 2022 IL App (2d) 200391, ¶ 72. We review the trial court's ultimate decision regarding pretrial release for an abuse of discretion. *Trottier*, 2023 IL App (2d) 230317, ¶ 13.

¶ 26    Defendant's argument that the State failed to meet its burden of proving by clear and convincing evidence that the proof is evident or the presumption great that he committed the offenses charged is meritless. The State's proffer in case No. 23-CF-684 (see *supra* ¶ 13) presented

clear and convincing evidence that defendant committed the offense of possession with intent to deliver methamphetamine (720 ILCS 646/55(a)(1)), 15 grams but less than 100 grams. That offense qualifies for pretrial detention under the Act (see 725 ILCS 5/110-6.1(a)(1)). The trial court's finding as such was not against the manifest weight of the evidence.

¶ 27    Defendant next argues that the State failed to meet its burden of proving by clear and convincing evidence that defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case.

¶ 28    In making a determination of a defendant's dangerousness, a trial court may consider, but "*shall not be limited to*" (emphasis added): (1) the nature and circumstances of any charged offense, including whether it is a crime of violence or a sex crime, or involved a weapon; (2) the defendant's characteristics and history, including any criminal history indicative of violent, abusive, or assaultive behavior, and any psychological history indicative of a violent, abusive, or assaultive nature, and the lack of any such history; (3) the identity of the person believed to be at risk from the defendant and the nature of the threat; (4) statements by the defendant and the circumstances of such statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of any victim or complaining witness; (7) the defendant's access to any weapon; (8) whether the defendant was on probation, parole, or the like at the time of the charged offense or any other arrest or offense; and (9) any other factors that have a reasonable bearing on the defendant's propensity for violent, abusive, or assaultive behavior, or the lack of such behavior. *Id.* § 110-6.1(g).

¶ 29    The evidence supports a finding of defendant's dangerousness to the community under multiple factors enumerated in section 110-6.1(g). Defendant is a 50-year-old man with a lengthy criminal history including multiple instances of domestic violence. He has exhibited repeated

defiance of bond and probation requirements, including failure to adhere to the requirements of drug court. While section 110-6.1(g) does not specifically list possession or intent to deliver Fentanyl to the members of our community as a factor to find dangerousness, it does specify that the trial court "*shall not be limited to*" (emphasis added) the enumerated factors. See 725 ILCS 5/110-6.1(g). The trial court's finding that defendant poses a danger to our communities by intending to deliver a substantial amount of a fatal substance is not in contradiction to the language of section 110-6.1(g), and certainly not against the manifest weight of the evidence.

¶ 30    As defendant concedes that that the State proved by clear and convincing evidence that he constitutes a willful flight risk, we need not examine that requirement. Based on the foregoing, the trial court did not abuse its discretion by granting the State's motion for pretrial detention in case No. 23-CF-684.

¶ 31    We now turn to defendant's contention that the trial court erred in ordering him detained for case Nos. 21-CF-169 and 22-CF-1039 because the State did not file a verified petition to detain him in those cases. Defendant argues that because his motion to be release on conditions was made pursuant to section 110-7.5(b) and 110-5 of the Act, he should have had a hearing under section 110-5(e) of the Act which directs the trial court to consider if any conditions of release can ensure defendant's appearance in court, but does not allow the trial court to order detention. We disagree.

¶ 32    Section 110-7.5(b) of the Act states that "On or after January 1, 2023, any person who remains in pretrial detention after having been ordered released with pretrial conditions, including the condition of depositing security, shall be entitled to a hearing under subsection (e) of Section 110-5." 725 ILCS 5/110-7.5(b).

¶ 33    Section 110-5(e) of the Act states:

"If a person remains in pretrial detention 48 hours after having been ordered released with pretrial conditions, the court shall hold a hearing to determine the reason for continued detention. If the reason for continued detention is due to the unavailability or the defendant's ineligibility for one or more pretrial conditions previously ordered by the court or directed by a pretrial services agency, the court shall reopen the conditions of release hearing to determine what available pretrial conditions exist that will reasonably ensure the appearance of a defendant as required, the safety of any other person, and the likelihood of compliance by the defendant with all the conditions of pretrial release. The inability of the defendant to pay for a condition of release or any other ineligibility for a condition of pretrial release shall not be used as a justification for the pretrial detention of that defendant." 725 ILCS 5/110-5(e).

¶ 34 Here, defendant was in custody at the time he filed his motion for release with conditions because he did not post bail under our previous cash bail structure. As such, he was entitled to a hearing pursuant to section 110-5(e), and he received one on January 3, 2024.

¶ 35 Section 110-5(a) of the Act states that

"(a) In determining which conditions of pretrial release, if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release, the court shall, on the basis of available information, take into account such matters as:

(1) the nature and circumstances of the offense charged;

(2) the weight of the evidence against the defendant, except that the court may consider the admissibility of any evidence sought to be excluded;

(3) the history and characteristics of the defendant, including:

(A) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, history criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal law, or the law of this or any other state;

(4) the nature and seriousness of the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, that would be posed by the defendant's release, if applicable, as required under paragraph (7.5) of Section 4 of the Rights of Crime Victims and Witnesses Act;

(5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process that would be posed by the defendant's release, if applicable *** 720 ILCS 5/110-5(a).

¶ 36     Defendant received the hearing he was entitled to after filing his motion. At that hearing, defendant was afforded the opportunity to present the trial court with any and all evidence that he should have been released with conditions. Before ruling on defendant's motion with respect to case Nos. 21-CF-169 and 22-CF1039, it specifically stated that its consideration was made "[u]nder 725 ILS 5/110-5" to determine what, if any, conditions of pretrial release applied to defendant. The trial court considered (1) the nature and history of the offenses charged; (2) the weight of evidence against defendant; (3) the history and characteristics of defendant; (4) the nature and seriousness of the specific, real and present threat to any person that would be posed by

defendant's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. See 725 ILCS 5/110-5(a). The trial court did hear evidence that defendant has exhibited a nearly uninterrupted pattern of criminal conduct since 1991. The trial court heard evidence that defendant has been in violation of bond conditions, necessitating forfeiture and the issuance of bench warrants, on at least seven occasions since 2005. The record indicates that the trial court considered the State's petition to detain under section 110-6.1 of the Code, and defendant's motion for release with conditions under section 110-5 of the Code. To adopt defendant's argument would be tantamount to holding that the mere filing of a motion for conditional release, in the absence of the State's petition to detain, operates as the proverbial "get out of jail free card." While it may have been best practice for the State to file a petition to detain defendant with respect to case Nos. 21-CF-169 and 22-CF1039, such a filing would be treated as a responsive pleading to defendant's motion for conditional release. See *People v. Davidson*, 2023 IL App (2d) 230344, ¶ 18. However, the absence of such a filing does not preclude the trial court from finding that no conditions of pretrial release applied to defendant under section 110-5(a). As such, we can find no error with the trial court's denial of defendant's motion for pretrial release with conditions under case Nos. 21-CF-169 and 22-CF1039.

¶ 37                             III. CONCLUSION

¶ 38     We affirm the judgment of the circuit court of McHenry County.

¶ 39     Affirmed.